IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2006 JUN 20  P 4: 35

AUTO-OWNERS INSURANCE )
COMPANY, a mutual insurance )
company incorporated in the )
State of Michigan, )
)
    Plaintiff, )
)
v. )    CIVIL ACTION NO.: 1:05-cv-1024-MHT
)
SUNSHINE CAMPING CENTER, )
INC., a corporation; UNION )
PLANTERS BANK, N.A., and/or )
UNION PLANTERS BANK, N.A. n/k/a )
REGIONS BANK, N.A., )
)
    Defendants. )
_____)

NARRATIVE SUMMARY OF UNDISPUTED FACTS AND BRIEF OF PLAINTIFF,
AUTO-OWNERS INSURANCE COMPANY, IN SUPPORT OF
MOTION FOR  SUMMARY JUDGMENT

**COMES NOW** Plaintiff, Auto-Owners Insurance Company (Auto-Owners), and files

this narrative summary of undisputed facts and brief in support of Auto-Owners' motion for

summary judgment heretofore filed in this cause as follows, to wit:

I

NARRATIVE SUMMARY OF UNDISPUTED FACTS

This action is a declaratory judgment action wherein Plaintiff, Auto-Owners

Insurance Company (Auto-Owners) seeks a determination that a policy of insurance issued

to Sunshine Camping Center, Inc., for the policy period 20 February 2003 to 20 February

2005 does not provide liability insurance coverage for the claims, allegations, damages,

actions, and/or judgment in that certain action styled Union Planters Bank, N.A. v.

Sunshine Camping Center, Inc., et al., Case No.: CV-04-251-M (hereinafter sometimes referred to as "CV-04-251-M") pending in the Circuit Court of Dale County, Alabama, or for the claims, allegations, damages, actions and/or judgment in that certain cross-claim and third-party claim filed by Union Planters Bank, N.A., and/or Union Planters Bank, N.A. n/k/a Regions Bank, N.A. (hereinafter sometimes referred to as "Union Planters/Regions") in that certain civil action styled Robert M. McAllister v. Sunshine Camping Center, Inc., et al., Civil Action No.: CV-04-296-M pending in the Circuit Court of Dale County, Alabama. Jurisdiction is predicated on diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. §1332 and the Federal Declaratory Judgment Act, 29 U.S.C. §2201, et seq. Answers to the complaint for declaratory relief and judgment have been filed on behalf of defendant Union Planters/Regions (doc. 8 ) and Defendant, Sunshine Camping Center (doc. 10).

On or about August 20, 2004, Union Planters Bank, N.A., filed suit against Sunshine Camping Center, Inc. and others in the Circuit Court of Dale County, Alabama. The suit was styled Union Planters Bank, N.A. v. Sunshine Camping Center, Inc., et al., Case No.: CV-04-251-M(hereinafter sometimes referred to as "CV-04-251-M"). A true and correct copy of the complaint in CV-04-251-M is attached to Auto-Owners' evidentiary submission as Exhibit "2".[1] Count I of the complaint in CV-04-251-M alleges breach of contract. Count II of the complaint in CV-04-251-M alleges negligence. Count III of the complaint in CV-04-251-M alleges wantonness. Count IV of the complaint in CV-04-251-M alleges fraud. Count V of the complaint in CV-04-251-M alleges conversion. Count VI of the complaint

---

[1]References to "Exhibit" in this brief refer to designated exhibits of Auto-Owners' evidentiary submission filed contemporaneously herewith.

in CV-04-251-M alleges civil felony.  Count VII of the complaint in CV-04-251-M alleges conspiracy.  Count VIII of the complaint in CV-04-251-M alleges wrongful hiring, training, and/or supervision.  Count IX of the complaint in CV-04-251-M alleges wrongful entrustment.  The gravamen of the Union Planters/Regions complaint in CV-04-251-M is in substance that Sunshine obtained funds of Union Planters/Regions through the commission of felonious and fraudulent acts and the submission of false, fraudulent and forged documents regarding items not actually sold to purported purchasers, and to which Union Planters/Regions was not actually given a security interest.  See, Exhibit "2" at ¶'s 13 and 16C.  The specific allegations of Union Planters Bank, N.A., in CV-04-251-M are set forth in Exhibit "2" to Auto-Owners' evidentiary submission.

The underlying action, CV-04-251-M, proceeded to trial on May 1 through 4, 2006, in the Circuit Court for Dale County, Alabama.  Following the close of evidence, the case was submitted to the jury on Union Planters/Regions' claim for breach of contract (Exhibit "7" at p. 36), negligence and wantonness (Exhibit "7" at p. 36-37), fraud and suppression (Exhibit "7" at p. 37-40), conversion (Exhibit "7" at p. 40-41), and civil felonies (Exhibit "7" at p. 41-44).  The jury in the underlying action, CV-04-251-M, was charged on both compensatory and punitive damages (Exhibit "7" at p. 45-48), attorney's fees and costs (Exhibit "7" at p. 48-49). General verdict forms were submitted to the jury, and no special interrogatories or special verdict forms were submitted, or requested to be submitted, to the jury.  See, Exhibit "7" at p. 24-28, 52-57.

On May 8, 2006, the Circuit Court of Dale County, Alabama, entered  judgment on jury verdicts in favor of Union Planters/Regions and against Defendant Sunshine Camping Center, Inc., in the amount of $143,870.79 compensatory damages, and in favor of Union

Planters/Regions and against Jon K. Williams in the amount of $96,894.32 compensatory damages. The jury did not award punitive damages and the only compensatory damages alleged and on which the jury was charged were for alleged economic loss. See, Exhibit "2" at ¶ 14, Exhibit "6" at ¶ 4, and Exhibit "7" at p. 44-46. A certified copy of the judgment is attached to Auto-Owners' evidentiary submission as Exhibit "3" and a certified copy of the verdict form of Defendant, Sunshine Camping Center, Inc., is attached as Exhibit "4" and a certified copy of the verdict form of Defendant Jon K. Williams is attached as Exhibit "5".

On or about November 15, 2004, Union Planters Bank, N.A. filed a cross-claim and third-party claim against Sunshine Camping Center, Inc., and others in the Circuit Court of Dale County, Alabama, in the underlying action styled Robert M. McAllister v. Sunshine Camping Center, Inc., et al., Civil Action No.: CV-04-296-M (hereinafter sometimes referred to as "CV-04-296-M"). A true and correct copy of the cross-claim and third-party claim filed in CV-04-296-M is attached to Auto-Owners' evidentiary submission as Exhibit "6". Count I of the cross-claim and third-party claim in CV-04-296-M alleges a claim for indemnity. Count II of the cross-claim and third-party claim in CV-04-296-M alleges breach of contract. Count III of the cross-claim and third-party claim in CV-04-296-M alleges negligence. Count IV cross-claim and third-party claim in CV-04-296-M alleges wantonness. Count V of the cross-claim and third-party claim in CV-04-296-M alleges fraud. Count VI of the complaint in CV-04-296-M alleges conversion. Count VII of the cross-claim and third-party claim in CV-04-296-M alleges civil felony. Count VIII of the cross-claim and third-party claim in CV-04-296-M alleges conspiracy. Count IX of the cross-claim and third-party in CV-04-296-M alleges wrongful hiring, training, and/or supervision. Count X of the cross-

4

claim and third-party claim in CV-04-296-M alleges wrongful entrustment. As in the complaint in CV-04-251-M, the gravamen of the cross-claim of Union Planters/Regions in CV-04-296-M is in substance that Sunshine obtained funds of Union Planters/Regions through the commission of felonious and fraudulent acts and the submission of false, fraudulent and forged documents regarding items not actually sold to purported purchasers, and to which Union Planters/Regions was not actually given a security interest. See, Exhibit "6" at ¶'s 3 and 7C. The specific allegations of Union Planters Bank, N.A., in the cross-claim and third-party claim in CV-04-296-M are set forth in Exhibit "6" to Auto-Owners evidentiary submission.

The allegations of the cross-claim and third-party claim of Union Planters/Regions in CV-04-296-M appear to be subsumed by the allegations in CV-04-251-M in that the allegations of Union Planters/Regions in its complaint in CV-04-251-M allege claims and damages relating to the same transactions and events which are the subject of its cross-claim and third-party claim in CV-04-296-M. See, Exhibits "2" at ¶'s 9-14 and "6" at ¶'s 1-4 to Auto-Owners' evidentiary submission. The jury in CV-04-251-M was specifically charged regarding claims Union Planters/Regions has made with regard to the transaction alleged in and which forms the basis of the cross-claim and third party claim in CV-04-296-M. See, Exhibit "7" at p. 37-39. As stated above, judgment has now be entered in CV-04-251-M in favor of Union Planters/Regions and against Sunshine Camping Center, Inc., in the amount of $143,870.79, compensatory damages. Certified copies of the judgment and verdict forms in CV-04-251-M are attached to Auto-Owners' evidentiary submission as Exhibits "3", "4" and "5".

Auto-Owners is an insurance company that from 20 February 2003 to 20 February

5

2005 had in force a policy of insurance issued to Sunshine Camping Center, Inc.  The Tailored Protection  policies of insurance contained a Commercial General Liability coverage (CGL) and Garage Liability coverage (GL) which provided certain insurance coverage as defined and limited in the policy, against damages that the insured became legally obligated to pay because of bodily injury, property damage, personal injury or advertising injury to which the insurance applies under the CGL coverage and under the GL coverage for damages because of bodily injury and property damage neither expected or intended by the insured arising from a garage hazard.  Said CGL and GL coverages contained a number of limitations, exclusions, conditions and terms.  Exhibits "1A" and "1B" to Auto-Owners' evidentiary submission are true and correct copies of the above referenced Auto-Owners Tailored Protection insurance policies along with the verifying affidavits of William E. Barrett, Jr.  The entire contents of Exhibits "1A" and "1B" are hereby adopted and incorporated by reference as if fully set forth herein and are referred to for the specific policy language.

Auto-Owners is currently providing a defense to Sunshine Camping Center under a full and complete reservation of rights, including without limitation, the right to withdraw the defense being provided in CV-04-251 and CV-04-296. The insurance coverage issues referred to above and the obligations of Auto-Owners to either defend or indemnify Sunshine Camping Center, Inc., with regard to the complaint and judgment in the underlying action CV-04-251, and the cross-claim and third-party claim of Union Planters/Regions in CV-04-296, are the subject of the above-captioned declaratory judgment action Civil Action No: 1:05-cv-1024-MHT.  Auto-Owners contends that its policies of insurance do not provide liability insurance coverage for any of the claims,

6

damages actions and/or judgments against Sunshine Camping Center, Inc., in CV-04-251

or regarding the cross-claim and third-party claim in CV-04-296.

Section I, Coverage A of Auto-Owners' Commercial General Liability Coverage in

force from 20 February 2003 to 20 February 2005 provides as follows:

### SECTION I - COVERAGES

### COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement.**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

            **(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

            **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

        **b.**    This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

7

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

  **c.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.**    **Exclusions.**

This insurance does not apply to:

  **a.**    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  [CG 00011188]

  **b.**    [As deleted and replaced by Endorsement 55069 (1-88)] "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

        **(1)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

        **(2)**    That the insured would have in the absence of the contract or agreement.

The Commercial General Liability Coverage (CGL) in the Auto-Owners' policies in force from 20 February 2003 to 20 February 2005 (CG 00011188) defines "bodily injury", "property damage", "occurrence" and "insured contract" as follows:

**SECTION V - DEFINITIONS**

\* \* \*

8

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

* * *

9.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

12.   "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Section I, Coverage B, Personal and Advertising Injury, contained in the

Commercial General Liability Coverage in force from 20 February 2003 to 20 February

2005 (CG 00011188), provides as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

1.    **Insuring Agreement.**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may

9

result.  But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

The Commercial General Liability Coverage (CGL) in the Auto-Owners' policies in force from 20 February 2003 to 20 February 2005 (CG 00011188) defines "bodily injury", "property damage", "occurrence" and "insured contract" as follows:

### SECTION V - DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

    **a.**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **b.**    Oral or written publication of material that violates a person's right of privacy;

    **c.**    Misappropriation of advertising ideas or style of doing business; or

    **d.**    Infringement of copyright, title or slogan.

* * *

10.    "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.    Oral or written publication of material that violates a person's right of privacy.

The Garage Liability Coverage of the Auto-Owners' Tailored Protection policies in force from 20 February 2003 to 20 February 2005 provides as follows:

**A.**    **BODILY INJURY LIABILITY**    To pay on behalf
**B.**    **PROPERTY DAMAGE LIABILITY** of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or

11

assumed under any contract as defined herein, for damages because of

**A.**    bodily injury, sickness or disease including death at any time resulting therefrom, or

B.    injury to or destruction of tangible property, including the loss of use thereof,

neither expected nor intended from the standpoint of the insured and arising out of the hazards defined in Section II of this coverage form.  [19652 (1-88)]

\* \* \*

## SECTION V - POLICY TERM, TERRITORY, STANDARD TIME

This coverage form applies only to bodily injury or property damage which occurs during the policy term as stated in the Declarations within the United States of America, its territories or possessions, Canada or Mexico, except with respect to automobiles, this coverage form also applies while the automobile is being transported between ports thereof.  The time of Effective Date and Expiration Date expressed in the Declarations is Standard Time at the address of the insured as stated in the Declarations.

The Garage Liability coverage of the Auto-Owners Tailored Protection insurance policies in force from 20 February 2003 to 20 February 2005 contain Garage Liability Amendatory Endorsement [Form 19634(1-91)] which provides as follows:

## GARAGE LIABILITY AMENDATORY ENDORSEMENT

It is agreed:

\* \* \*

2.    Under SECTION I - INSURING AGREEMENTS: A. BODILY INJURY LIABILITY and B. PROPERTY DAMAGE LIABILITY:

12

* * *

    c.    The following exclusions are added:

        (1)    Liability coverage does not apply to any liability assumed under any contract or agreement. However, this exclusion does not apply to liability for damages:

            (a)    assumed under a contract or agreement that is defined as an insured contract; or

            (b)    that the insured would have even in the absence of a contract or agreement.

All other terms and conditions of the policy apply.

Both the Commercial General Liability coverage as well as the Garage Liability coverage of the Auto-Owners Tailored Protection insurance policies in force from 20 February 2003 to 20 February 2005 contain an "Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact" [Form 59218 (1-91)] which provides as follows:

"**This endorsement changes the policy. Please read it carefully.**
**ABSOLUTE EXCLUSION FOR FRAUD,**
**MISREPRESENTATION, DECEIT OR**
**SUPPRESSION OR CONCEALMENT OF FACT**

This policy does not apply to any claim arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recovery based on direct liability, vicarious liability or agency principles."

As stated above, Auto-Owners is currently providing a defense to the Sunshine Camping Center under a full and complete reservation of rights including, without limitation,

the right to withdraw the defense being provided in both CV-04-251-M and CV-04-296-M.

## II

## SUMMARY JUDGMENT IS DUE TO BE GRANTED IN FAVOR OF AUTO-OWNERS

The insurance coverage issues referred to above and the obligations of Auto-Owners to either defend or indemnify Sunshine Camping Center as to the claims, allegations, damages, actions and/or judgment against Sunshine Camping Center in the underlying action CV-04-251, and regarding the cross-claim and third-party claim in CV-04-296, are the subject of the above-captioned declaratory judgment action pending herein. For the reasons that follow, Auto-Owners contends that its policies of insurance do not provide liability insurance coverage for defense or indemnity for the claims, damages, allegations or judgment against Sunshine Camping Center in CV-04-251 and the cross-claim and third-party claim in CV-04-296 pending in the Circuit Court of Dale County, Alabama.

### A.    Standard of Review

Rule 56 of the *Federal Rules of Civil Procedure* concerning summary judgment states, in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c).  The Eleventh Circuit has followed the direction provided by Rule 56 saying, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank,

14

N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). An issue of material fact is "genuine" only if "a reasonable trier of fact, considering the record evidence, could find for the non-moving party." Lee v. Etowah County Bd. Of Educ., 963 F.2d 1416, 1425 (11th Cir. 1992). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995); Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). A party may not defeat a motion for summary judgment simply by restating the allegations of the pleadings. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court ruling on a motion for summary judgment must believe the evidence of the non-movant and draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis by the Court). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Id. at 249. A fact is not material unless it is identified by the controlling substantive law as an essential element

of the non-moving party's case.  Id. at 248; accord, Anderson v. Southern Ductile Casting
Corp., 869 F. 2d 1372, 1376 (11th Cir. 1988).

      "An insurance company's duty to defend its insured from suit is usually determined
by the language of the insurance policy and by the allegations in the complaint filed against
the insured." Auto-Owners Ins. Co. v. Toole, 947 F. Supp 1557 (M.D.Ala. 1996) (quoting,
Alfa Mutual Ins. Co. v. Morrison, 613 So. 2d 381, 382 (Ala. 1993)); see also, Thorn v.
American States Ins. Co., 266 F. Supp.2d 1346 (M.D. Ala. 2002); Ladner & Co., Inc. v.
Southern Guaranty Ins. Co., 347 So. 2d 100, 102 (Ala. 1977).  Insurance companies have
the right to limit their liability.  See Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.,
Inc., 289 Ala. 719, 272 So. 2d 232 (Ala. 1972).  Under Alabama law, the insured bears the
burden of establishing coverage by demonstrating that a claim falls within the policy.  See
Colonial Life & Acc. Ins. Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967).  If there is no
ambiguity, an insurance contract must be enforced as written, and courts should not defeat
expressed provisions in a policy, including exclusions from coverage, by making a new
contract for the parties.  See Altiere v. Blue Cross and Blue Shield, 551 So. 2d 290, 292
(Ala. 1989).

    **B.**    **Union Planters/Regions Does Not Allege Recoverable Damages
Because of Bodily Injury, Property Damage, Advertising Injury or
Personal Injury**

      The Auto-Owners Commercial General Liability coverage only provides coverage
for damages because of bodily injury, property damage, personal injury or advertising injury
(the Garage Liability coverage is limited to damage because of bodily injury or property
damage) to which the insurance applies as defined and limited in the particular coverage

16

contained in the policies. Previously set forth in this brief are pertinent sections of the Auto-Owners' policies quoting the liability coverages contained therein. Union Planters'/Regions' complaint in CV-04-251-M and the cross-claim and third-party claim in CV-04-296-M do not allege a damage that could be covered under any liability coverage contained in the Auto-Owners policies. Union Planters'/Regions' complaint in CV-04-251-M and the cross-claim and third-party claim in CV-04-296-M seeks the recovery of purely economic losses or damages to intangible property which do not, as a matter of law, fall within the definition of property damage. See, American States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995).[2] In particular, Union Planters/Regions alleged it lost "the sums paid to Sunshine," "lost use and benefit of those sums", interest, legal expenses and attorneys fees. See, Exhibit "2", ¶ 14 and Exhibit "6" at ¶ 4. The judgment in CV-04-251-M in favor of Union Planters/Regions and against Sunshine was for compensatory damages only and encompass only damages for alleged economic loss. See, Exhibit "2" at ¶ 14, Exhibit "3", Exhibit "4", and Exhibit "7" at p. 44-46.

In Auto-Owners Ins. Co. v. Toole, supra, this Court considered a declaratory judgment action regarding coverage under a similar Auto-Owners policy for state law claims relating to the sale and financing of automobiles. Granting summary judgment in favor of Auto-Owners and finding that the complaint in the underlying action did not allege "property damage" within the meaning of the policies, the Court stated:

\*\*\*

---

[2] It is undisputed that the complaint in CV-04-251-M and the cross-claim and third-party claim in CV-04-296-M do not allege bodily injury caused by an "occurrence", or an advertising injury or personal injury offense and thus, do not claim damages because of bodily injury, advertising injury or personal injury.

[T]he court also agrees with Auto-Owners that the claims in counts ten and eleven do not involve "property damage" within the meaning of the policies. "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property ... [or] [l] oss of use of tangible property that is not physically injured." The Alabama Supreme Court has accepted the following definitions of "tangible property" and "intangible property":

" 'Tangible property is that which may be felt or touched; such property as may be seen, physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.

" 'Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained.'"

American States Ins. Co. v. Martin, 662 So. 2d 245, 248 (Ala. 1995) (quoting 73 C.J.S. Property § 15 at 184 (1983)). Because the damages that the state plaintiffs seek pursuant to counts ten and eleven are not for injury to tangible property, that is property "which may be felt or touched," the damages are not included within the definition of tangible property.

Thus, this Court held in Toole that similar events "should not be viewed as 'occurrences'", and did "not involve 'property damage,' within the meaning of the policies." See, Toole, 947 F. Supp at 1564. The underlying claims of Union Planters/Regions and simply do not allege property damage as defined in the policy. American States v. Martin, supra, is absolute authority based on sound Alabama Supreme Court precedent that Union

18

Planters'/Regions' purported economic loss or damage to intangible property are not property damage as defined in the policies. A similar conclusion was reached by the Eleventh Circuit in an unpublished opinion in <u>Auto-Owners Ins. Co. v. Gilland-Wyant Imports, Inc.</u>, 247 F. 3d 248 (11th Cir. 2001) where the Court held that loss of economic value related to a car dealership's falsified paperwork on vehicles did not qualify as "property damage". A copy of the district court and Eleventh Circuit opinions are attached as Exhibit "8" to Auto-Owners' evidentiary submission.

Judgment as a matter of law in favor of Auto-Owners is due to be granted because the claims, damages, allegations and/or judgment in the underlying actions are not for a covered damage. All damages alleged by and/or awarded to Union Planters/Regions are non-covered economic losses. The Alabama Supreme Court and this Court have held that the loss of money does not qualify as property damage. <u>See</u>, <u>Thorn v. American States Ins. Co.</u>, 266 F. Supp. 2d 1346 (M.D. Ala. 2002), <u>quoting</u>, <u>American States Ins. Co. v. Martin</u>, 662 So. 2d 245 (Ala. 1995).

In the following sections of this brief, Auto-Owners sets forth the reasons this Court should hold that the allegations, damages and judgment in the underlying actions do not allege "an occurrence" and further that the Auto-Owners insurance policy specifically excludes coverage for the claims, allegations and damages alleged by Union Planters/Regions.

**C.    Union Planters'/Regions' Claims, Damages and Judgment Against Sunshine Camping Center Do Not Constitute An Occurrence and Do Not Evoke Coverage for Defense or Indemnity**

Even if the claims of Union Planters/Regions alleged a covered damage, Section I, Coverage A of the Auto-Owners Commercial General Liability Coverage expressly states

that the insurance applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "the bodily injury or property damage occurs during the policy period." The Garage Liability Coverage of the Auto-Owners Tailored Protection Policy also states that this "coverage form applies only to bodily injury or property damage which occurs during the policy term...". Similarly, the Garage Liability coverage contains a fortuity requirement and provides that the Garage Liability coverage applies only to damages because of bodily injury or property damage "neither expected nor intended from the standpoint of the insured" and arising out of a garage hazard. An "occurrence" is defined in the Commercial General Liability Coverage of the Auto-Owners Insurance policy as follows:

### SECTION V - DEFINITIONS

* * *

9.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Thus, the insuring agreement of the Auto-Owners insurance policy provides that coverage is only available for damages because of bodily injury or property damage caused by an occurrence (i.e., an accident). The occurrence language in an insurance policy is a fortuity requirement. Allen, Alabama Liability Handbook, § 8-1. Accidental injury or damage is required by definition and the occurrence language is a fundamental and material fact of the insuring agreement. Also, the occurrence or fortuity requirement is contained in the insuring agreement, therefore, the insured has the burden of proving by substantial evidence that its claimed loss or damage falls within the coverage of the policy. State Farm Fire and Casualty Ins. Co. v. Shady Grove Baptist Church, 838 So. 2d 1039

(Ala. 2002).  Moreover, and as set forth in the following section, Exclusion 2.a. of the Commercial General Liability coverage further provides that the insurance does not apply to bodily injury or property damage expected or intended by the insured.  Similarly, the Garage Liability coverage provides that it applies only to damages because of bodily injury or property damage "neither expected nor intended from the standpoint of the insured" and arising out of a garage hazard.

In determining whether allegations relating to the sale and financing of motor vehicles should be viewed as an "occurrence" as defined in an Auto-Owners policy this Court held in Auto-Owners Ins. Co., v. Toole, 947 F. Supp. 1557 (M.D. Ala. 1996), that "the court should look to the kind of claim being asserted regardless of its label." Id. at 1546. The court in Toole  stated:

> [I]n determining whether there is coverage, the court should look to the specific 'kind of ... claim' being asserted, regardless as to whether it is labeled a contract claim, a tort claim, or whatever, and the 'purpose of the general liability policy' from which coverage is sought. City of Burlington, 655 A.2d at 722.
>
> Here, counts ten and eleven are based on the sale and financing of motor vehicles. As stated, the counts essentially assert claims arising out of a business dispute, albeit in the context of a consumer contractual transaction. The court believes that the following comments best explain why the events giving rise to the counts should not be viewed as occurrences: 'To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation.
> ***
> It is apparent from a reading of the policies between Auto-Owners and Toole that they were not intended to cover

21

business transactions and business ventures, of a consumer nature or of another kind.

\*\*\*

There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions." Id. at p. 1546.

In Toole, the Court held that allegations relating to the sale and financing of motor vehicles did not constitute an "occurrence". Id. Similarly, in Auto-Owners v. American Central Ins. Co., 739 So. 2d 1078 (Ala. 1999), the Alabama Supreme Court held "that although the claims in the underlying action alleged both intentional and unintentional acts, those claims were not severable so as to obligate the [insurer] to provide a defense as to some claims but not as to others." Id. at 1082. In Auto-Owners v. American Central, the Alabama Supreme Court considered the applicability of an exclusion for bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse. The Alabama Supreme Court held that all claims arose out of physical or mental abuse, therefore, coverage was not owed even though the complaint alleged negligent acts, wanton conduct and assault and battery. Id. at 1081. In Auto-Owners v. American Central, supra, the Alabama Supreme Court cited Board of Education v. Continental Insurance Co., 198 A.D. 2d 816, 604 N.Y.S. 2d 399 (1993), and stated parenthetically that "allegations that [a] school district failed to stop or prevent certain conduct do not change [the] gravamen of [the] complaint from intentional acts to negligence." Id.

The decision of the court in Toole, supra, and the holding of the Alabama Supreme

22

Court in <u>Auto-Owners v. American Central</u>, <u>supra</u>, are wholly consistent.  The legal proposition for which these decisions stand is that where the gravamen of a complaint or claim is excluded conduct (e.g., intentional conduct), allegations of negligence or negligent conduct, under those circumstances, does not invoke coverage or constitute an "occurrence".  This Court has agreed with this proposition, and recently Chief Judge Fuller held that if claims in an underlying action allege both intentional and unintentional acts and the intentional claims are not severable from the unintentional claims, the insurance company is not required to defend the insured on the unintentional claims.  <u>See</u>, <u>State Auto Property and Casualty Ins. Co. v. Calhoun</u>, 2005 WL 2406055 (M.D. Ala. 2005), <u>quoting</u>, <u>Auto-Owners Ins. Co. v. American Central Ins. Co.</u>, 739 So. 2d 1078, 1081 (Ala. 1999). The gravamen of Union Planters'/Regions' claims in the underlying actions are intentional and fraudulent conduct which is not covered under the Auto-Owners insurance policies. The complaint and cross-claim in the underlying actions basically allege sham transactions through the use of forged documents for the purpose of obtaining funds from Union Planters/Regions.  <u>See</u>, Exhibit "2" at ¶13 and 16C and Exhibit "6" at ¶ 3 and 7C. The allegations simply do not allege a fortuitous or accidental event constituting an "occurrence" (i.e., accident).

Since the rulings in <u>Auto-Owners v. Toole</u>, <u>Auto-Owners v. American Central</u> and <u>State Auto v. Calhoun</u>, the Alabama Supreme Court has again considered the "occurrence" requirement of a liability insurance policy where the complaint contained multiple causes of action in <u>Hartford Cas. Ins. Co. v. Merchants & Farmers Bank</u>, 2005 WL 2108550 (Ala. Sept. 2, 2005).  Like the claims in this case, the claims in <u>Hartford</u> also arose between a retailer and a bank/secured party.  The claims asserted in <u>Hartford</u> were, however, claims

23

Case 1:05-cv-01024-MHT-VPM    Document 30    Filed 06/20/2006    Page 24 of 44


asserted by the retailer against the bank arising out of the bank's assertion of security interests superior to the retailer in certain merchandise. The retailer alleged causes of action for conversion, detinue, negligence, willfulness, and wantonness against the bank. In Hartford the Court stated that "[i]n substance, Barnett [the retailer] alleged that Merchants [the bank] had improperly seized inventory and money belonging to Barnett and that in so doing Merchants had breached a duty it owed Barnett". Id. at * 1.

Following the retailer's filing of suit against the bank/Merchants, Merchants submitted the claim and lawsuit to Hartford Casualty Insurance Company for a defense and for indemnification if required. Hartford declined to provide a defense or indemnity concluding that the allegations of the complaint did not meet the policy definition of an "occurrence", "property damage" or "bodily injury". See, Hartford, 2005 WL 2108550 at *1. The definition of "occurrence" in the Hartford policy was identical to the definition of occurrence contained in the subject Auto-Owners' insurance policies (i.e., occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions). See, id. at * 2. The Alabama Supreme Court in Hartford stated that courts are to apply a two-pronged analysis to determine whether an insurer has a duty to supply a defense. See, id. at * 4. First, the Court must determine whether the facts alleged in the complaint state an "occurrence" within the meaning of the policy. Id. Secondly, and presupposing a negative answer to the first inquiry, the court must determine whether the facts which may be proved by admissible evidence state an occurrence. Id.

The Court in Hartford noted that the actions that the bank took to secure its claim under the loan agreement by taking control of property and amounts in accounts

24

demonstrated nothing "unintended or unforeseen" so as to constitute an occurrence under the policy. See, id. at * 6. The Court in Hartford specifically referenced the definition of accident found in *Black's Law Dictionary* at 15 (7th Ed. 1999) which defined accident as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." Id. at * 4. The Court in Hartford also referenced Alabama appellate court opinions in which the term "accident" had been variously defined as something unforeseen, unexpected, or unusual. See, id, citing, United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama, 424 So. 2d 569, 572 (Ala. 1982), citing, Employers Ins. Co. of Alabama v. Rives, 264 Ala. 310, 87 So. 2d 653 (1955).

The Court in Hartford also recognized that the retailer's complaint contained allegations of negligence. Id. at * 6. The Court in Hartford noted that the negligence count adopted factual averments of prior counts including allegations that the bank had taken control of property and money of the retailer. See, id. The Court in Hartford concluded that the allegations of negligence "merely dangles as a cause of action that is unrelated to any asserted facts". Id. The Court in Hartford held that when a "complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as 'negligence' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend". Id. at * 6.

Because the averments of the complaint did not establish a duty to defend, the Court in Hartford turned to the second prong of the analysis, i.e., "whether other facts that 'may be proved by admissible evidence' but that were not alleged in the complaint would show or create a reasonable inference that there had been an 'occurrence' within the

25

meaning of the policy so as to require [the insurer] to defend". Id. at * 6. The Court in Hartford held that the facts established that the bank decided upon a deliberate course of conduct and, throughout the time frame in question, intentionally pursued that course of conduct. Id. The Alabama Supreme Court concluded that the insured could not on these facts show an unexpected, unintended, or unforeseen result from its course of action. The Court thus held that there was no accident and no occurrence that would trigger the insurer's/Hartford's duty to defend. Id.

### 1.     Allegations of Breach of Contract and/or for Contractual Indemnity Do Not Constitute An Occurrence

Under Alabama law, breach of contract does not constitute an occurrence. See, Gary C. Wyatt v. Reliance Ins. Co., 540 So. 2d 688, 690, 691 (Ala. 1988); see also, Ajdarodini v. State Automobile Ins. Co., 628 So. 2d 312 (Ala. 1993). Thus, neither Union Planters'/Regions' claims for breach of contract in both underlying actions or for contractual indemnity in CV-04-296-M constitute an occurrence for which there is coverage under the Auto-Owners Insurance policy. See, id; see also, Ladner & Co. v. Southern Guaranty Ins. Co., 347 So. 2d 100 (Ala. 1977).

Furthermore, and as stated in the preceding section, Auto-Owners' policies do not provide coverage for pure economic loss occurring from a breach of contract and purported economic loss or damage to intangible property are not property damage as defined in the policies. Also, the Commercial General Liability Coverage contains a contractual liability exclusion [exclusion 2.b.] deleted and replaced by endorsement 55069 (1-88) and the Garage Liability Coverage Amendatory Endorsement also contains a contractual liability exclusion [form 19634, 2.c.1.].

**2.    Allegations of Conspiracy Do Not Constitute An Occurrence**

Union Planters'/Regions' claims in CV-04-251 and CV-04-296 allege a civil conspiracy to commit fraudulent and felonious acts. See, Exhibit "2" at ¶ 31; Exhibit "6" at ¶ 22. In State Auto Property and Casualty Ins. Co. v Calhoun, 2005 WL 2406055 (M.D. Ala. 2005), this Court held that under Alabama law, civil conspiracy is by definition an intentional act:

> In order to prove conspiracy, Plaintiff's must allege and prove that the defendant... agreed with at least one co-conspirator... to accomplish an unlawful end... and intended to have  that unlawful end brought about... . On cannot inadvertently become a member of a civil conspiracy. ... [W]hat is required is that the combiners should have acted in order that ... the plaintiff should suffer damage.

Id., quoting, First Bank of Childersburg v. Florey, 676 So. 2d 324, 327 (Ala. Civ. App. 1996).   One cannot unknowingly or accidentally enter into a conspiracy; therefore, any damages alleged by Union Planters'/Regions' were not caused by an "occurrence" and are also damages "expected or intended" and excluded by the Auto-Owners policies. In State Auto v. Calhoun, this Court expressly held that an insurer was not required to defend the insured on a conspiracy charge because the insurance policy excluded defense of claims based on intentional acts.  Calhoun, supra, 2005 WL 2406055 at *6.

**3.    Allegations of Conversion Do Not Constitute An Occurrence**

Both Union Planters'/Regions' complaint in CV-04-251-M and cross-claim and third-party claim in CV-04-296-M allege conversion of monies by Sunshine Camping Center. Under Alabama law, "conversion is an intentional tort".     Johnson v. Northpointe Apartments, 744 So. 2d 899, 904 (Ala. 1999).  The intent required for conversion is not

27

necessarily a matter of conscious wrongdoing, but rather an intent to exercise a dominion or control over the goods of another which is, in fact, inconsistent with another's rights. See, id; see also, Industrial Technologies, Inc. v. Jacobs Bank, 872 So. 2d 819. 826 (Ala. 2003).

The arguments and authorities set forth with regard to the conspiracy claim of Union Planters/Regions apply equally to the conversion claims.  Allegations of conversion do not constitute an occurrence and also are necessarily "expected or intended" conduct excluded from coverage by the Auto-Owners insurance policy. See, Calhoun, supra.  As stated above, even if the conversion claims could be characterized as unintentional, such claims are not severable and/or dangle from the intentional claims and thus, Auto-Owners is entitled judgment as a matter of law that there is no coverage under the Auto-Owners insurance policy. See, Calhoun, supra, at p. 14; See also, Hartford, 2005 WL 2108550 at * 5.

### 4.    A Re-Characterization of Claims as Willful, Wanton or Negligent Does Not Constitute An Occurrence

The type intentional conduct upon which the claims of Union Planters/Regions are based in the underlying actions do not constitute an occurrence.  The occurrence language in an insurance policy is a fortuity requirement.    Allen, Alabama Liability Insurance Handbook, §8-1.  Accidental injury or damage is required by definition and the occurrence language is a fundamental and material fact of the insuring agreement. The gravamen of the complaint in CV-04-251-M and the cross-claim and third party claim in CV-04-296-M is in substance that Sunshine obtained funds of Union Planters/Regions through sham transactions and the commission of felonious and intentional fraudulent acts and the

28

submission of false, fraudulent and forged documents regarding items not actually sold to purported purchasers, and to which Union Planters/Regions was not actually given a security interest.  See, Exhibit "2" at ¶'s 13 and 16C; see also, Exhibit "6" at ¶'s 3 and 7C. The type intentional misconduct engaged in by Sunshine Camping, which is the subject of Union Planters'/Regions' claims does not, as a matter of law, constitute an occurrence. See, Hartford, 2005 WL 2108550 at * 5 ("nothing in these averments shows [Defendant's] actions, or the consequences of its actions, were 'unintended or unforseen' so as to constitute an occurrence under the policy").

At the outset of this section (III.) Auto-Owners set forth statements of this Court in Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557 (M.D. Ala. 1996), supporting a finding by this Court that the claims of Union Planters/Regions do not constitute an "occurrence" and that there is no coverage for the claim against Sunshine Camping Center in CV-04-251 or CV-04-296.  In Toole, the Auto-Owners policy contained an absolute fraud exclusion. This Court held that the fraud exclusion contained in the Auto-Owners policy barred coverage for all claims arising out of fraud and thus precluded coverage for all counts of Plaintiff's complaint which sounded in fraud.  In Toole the Court held that the allegations of willful, wanton or negligent conduct in a complaint did not warrant a different outcome where the claim sounded in fraud and fraud was excluded under the policy.  See, Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1562 (M.D. Ala. 1996); State Farm Fire & Cas. Co. v. Burkhardt, 96 F. Supp. 2d 1343, 1347 (M.D. Ala. 2000).  The same conclusion was recently reached by the Alabama Supreme Court in the analogous Hartford case discussed above.  Hartford, supra, 2005 WL 2108550 at *5.

It should be noted that the claims of wanton conduct are characterized as intentional

29

conduct in Alabama. "Wantonness is 'characterized as an act that cannot exist without a purpose or design, a conscious or intentional act'" that is covered under an occurrence based liability policy such as the policy at issue in this case, which also excludes expected or intended damages. See, Allstate Indemnity & Co. v. Lewis, 985 F. Supp. 1341 (M.D. 1997).

The claims of Union Planters/Regions in the underlying action simply do not allege an 'occurrence' (i.e., an accident) as defined in the Auto-Owners Insurance policies. The inclusion of allegations of willful, wanton or negligent conduct do not warrant a different outcome. See, Toole, supra; Hartford, supra. Furthermore, where as here the negligence claims are based on the same underlying facts as claims of intentional conduct, the claims are not severable and/or "merely dangles as a cause of action", and Auto-Owners is not required to defend either the intentional claims or the unintentional claims. See, Calhoun, supra. See also, Hartford, supra. Judgment as a matter of law is, therefore, due to be entered in favor of Auto-Owners Insurance Company.

### 5.    Allegations of Civil Felony Do Not Constitute An Occurrence

Union Planters'/Regions' claims asserting a right to civil recovery pursuant to Alabama Code §6-5-370 (1975) for the felonious acts of the defendant is also excluded from coverage and does not constitute an occurrence under the Auto-Owners Insurance policy. Alabama Statute, §6-5-370, Code of Alabama, 1975, allows a party to bring a civil action for any injury amounting to a felony without prosecution of the offender; however, it does not create a cause of action, but merely allows a party to commence a civil action even if the party does not pursue criminal prosecution. See, Lewis v. Fraunfelder, 796 So. 2d 1067, 1070 (Ala. 2000).

In its claim Union Planters/Regions asserts, *inter alia*, criminal conspiracy (§13A-4-3), identity theft (§13A-8-192), forgery (§13A-9-3), and possession of a forged instrument (§13A-9-6). Each of these are crimes requiring a criminal intent to commit the offense. See also, Exhibit "7"at p. 41-43. For the same reasons set forth in parts 2 and 3 above, these allegations do not constitute an occurrence and are also expressly excluded from coverage under the Auto-Owners insurance policies. See, Toole, supra; see also, Calhoun, supra (civil conspiracy is by definition an intentional act).

### D. The Auto-Owners Insurance Policies Specifically Exclude Coverage for the Claims Asserted by Union Planters/Regions

### 1. The Auto-Owners Insurance Policy Contains An Absolute Fraud Exclusion

There is, as a matter of law, no coverage under any applicable Auto-Owners' policy for any claim asserted by Union Planters/Regions in CV-04-251 and CV-04-296 based on fraud, suppression, concealment or misrepresentation because all liability coverages contained in the applicable Auto-Owners' Tailored Protection Insurance policies contained an Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact [Form 59218 (1-91)]. This exclusion contained in the Auto-Owners' Tailored Protection policies applies to the CGL coverage as well as to the GL coverage. This exclusion contained in the Auto-Owners policies in force from 20 February 2003 to 20 February 2005 provides as follows:

"**This endorsement changes the policy. Please read it carefully.**

**ABSOLUTE EXCLUSION FOR FRAUD,
MISREPRESENTATION, DECEIT OR
SUPPRESSION OR CONCEALMENT OF FACT**

31

> This policy does not apply to any claim arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recovery based on direct liability, vicarious liability or agency principles."

Because of the absolute exclusion for fraud contained in the Auto-Owners CGL and GL coverages for the 20 February 2003 to 20 February 2005 terms, Auto-Owners does not, as a matter of law, owe a duty to supply a defense or to provide indemnity for any claim arising out of alleged fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton.  See, Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557 (M.D. Ala. 1996); Auto-Owners Ins. Co. v. Boutwell, No. 96-T-684-N, slip op. at 3-6 (M.D. Ala. Oct. 28, 1996). It is undisputed that this exclusion is contained in all policies issued by Auto-Owners for the 20 February 2003 to 20 February 2005 policy terms and that such exclusion applies to both the CGL and GL coverages. Count IV of the complaint in CV-04-251 and Count V of the cross-claim and third-party claim specifically allege fraud and, in fact, all claims contained in Union Planters/Regions complaint in CV-04-251 and cross-claim and third-party claim CV-04-296 arise out of an alleged fraudulent and sham financing scheme and are excluded from coverage. That Union Planters/Regions may allege that certain defendants acted willfully, wantonly or negligently with regard thereto does not change the outcome, and judgment as a matter of law is due to be granted in favor of Auto-Owners. See, Auto-Owners Ins. Co. v. Toole, supra; see also; Calhoun, supra; Hartford, supra.

## 2. The Auto-Owners Policies Do Not Provide Coverage for Bodily Injury or Property Damage Expected or Intended by the Insured

The subject Auto-Owners policies of insurance define occurrence as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. The felonious and intentional fraudulent and wrongful conduct alleged in the complaint in CV-04-251-M and cross-claim and third-party claim in CV-04-296-M are certainly not accidents. The complaint and cross-claim in the underlying actions basically allege forged documents and sham transactions for the purpose of obtaining funds from Union Planters/Regions. See, Exhibit "2" at ¶ 13 and 16C and Exhibit "6" at ¶3 and 7C. Section I, Coverage A, Exclusion 2.a. of the Commercial General Liability Coverage also specifically states that "this insurance does not apply to bodily injury or property damage expected or intended from the standpoint of the insured". Likewise, the Garage Liability coverage states in the insuring agreement that the coverage is only available for damages because of property damage or bodily injury, "neither expected nor intended by the insured".

In Townsend Ford, Inc., v. Auto-Owners Insurance Company, 656 So. 2d 360 (Ala. 1995), the Alabama Supreme Court held that an Auto-Owners' policy similar to the one at issue in this case did not provide coverage for defense or indemnity for intentional fraud claims. The Court based its decision on the exclusion for damages for bodily injury or property damage expected or intended from the standpoint of the insured.

The complaint in CV-04-251 and the cross-claim and third-party claim in CV-04-296 allege intentional criminal, fraudulent and wrongful conduct which are not covered by the Auto-Owners' policies. The fact that Union Planters'/Regions' claims may also allege negligent acts does not invoke coverage for a defense or indemnity. In State Auto Property and Casualty Insurance Company v. Calhoun, 2005 WL 2406055 (M.D. Ala. 2005), this

Court stated:

> As the policy excludes defense of claims based on intentional acts, the Court holds that State Auto is not required to defend Calhoun on the conspiracy charge.
>
> The only other allegations against Calhoun are contained in Counts Six and Seven of the amended state court complaint. Count Six alleges that Calhoun "willfully, wantonly or negligently" caused or allowed the decedent to execute the deed when she knew or should have known he was not competent to do so.  Count Seven alleges that Calhoun "willfully, wantonly or negligently" exercised undue influence over the decedent, thereby causing him to execute the deed, when she knew or should have known she was exercising undue influence.  These both allege negligent acts, and thus are arguably covered by the "property damage caused by an occurrence" clause of the insurance policy.  However, if claims in an underlying action allege both intentional and unintentional acts and the intentional claims are not severable from the unintentional claims, the insurance company is not required to defend the insured on the unintentional claims. See, Auto-Owners Ins. Co. v. Amer. Central Ins. Co., 739 So. 2d 1078, 1081 (Ala. 1999).  Here, the negligence claims are based on the same underlying facts as the claims of intentional conduct, and therefore are not severable.  Thus, State Auto has no obligation to defend Calhoun on the negligence claims, that is, Counts Six and Seven of the amended state court complaint.

In this case all claims of Union Planters/Regions are based on the same facts as

the claims of sham transactions and intentional and criminal conduct and are not severable

and are excluded.  See, Calhoun; supra.  As stated above, all the claims also arise out of

excluded intentional and fraudulent conduct and also do not constitute an "occurrence".

See, Toole, supra; see also, Hartford, supra.

### E.    The Garage Liability Coverage Does Not Provide Liability Insurance Coverage For Any Of The Claims Asserted Because Such Claims Do Not Arise Out Of A Garage Hazard.

The Garage Liability coverage of the Auto-Owners' policy does not provide coverage

34

for the claims asserted by Union Planters/Regions in the complaint and judgment in CV-04-251 or the cross-claim and third-party claim in CV-04-296.  The claims simply do not arise out of a hazard as defined in the Garage Liability coverage.  The Garage Liability coverage only provides coverage for bodily injury or property damage that the insured becomes obligated to pay by reason of liability imposed by law, or assumed under any insured contract because of bodily injury or property damage as defined in the policy and which is neither expected nor intended from the standpoint of the insured and **which arises out of one of the hazards defined in Section II of the GL coverage.**  The garage hazards are defined in the Garage Liability coverage as follows:

### SECTION II - DEFINITION OF HAZARDS

### Division I.  Premises-Operations-Automobiles

The insurance under this division covers the ownership, maintenance, occupation or use of the premises for the purposes of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations which are necessary or incidental thereto, including (1) the ownership, maintenance or use of any automobile in connection with the foregoing; (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by the named insured and, if the named insured is an individual, any automobile owned jointly by the named insured and spouse; and (3) the use of any automobile not owned by the named insured by (a) the named insured, if an individual, and his spouse if a resident of the same household, (b) any person to whom the named insured regularly furnishes an automobile and the spouse of such person if a resident of the same household, or (c) a relative of (a) or (b) residing in the same household an not owning any automobile.  This insurance does not apply under subdivision (3) to (i) any automobile owned by or furnished for regular use to (a)  or (b) above or a member of the household of either, other than a private chauffeur or domestic servant; (ii) motor scooters, motorcycles or midget automobiles commonly

referred to as "karts," "go-karts," "speedmobiles" or any
comparable name; or (iii) any automobile not of the private
passenger type while used in a business or occupation of (a),
(b) or (c) above or to any private passenger automobile while
used in such business or occupation if operated by other than
(a) or (b) above or the chauffeur or servant of such person
unless such person is present in such automobile.

### Division II. Premises-Operations-Automobiles not Owed or Hired

The insurance under this division covers the ownership,
maintenance, occupation or use of the premises for the
purposes of an automobile repair shop, service station, storage
garage or public parking place and all operations which are
necessary or incidental thereto, including the use for any
purpose in connection with the foregoing of any automobile not
hired, registered or owned in whole or in part by the named
insured, any partner or officer thereof.

The purpose of the GL coverage is to provide coverage for repair facility operations
and claims arising out of the ownership or use of automobiles. The CGL coverage contains
an exclusion for claims arising out of the ownership, operation or use of automobiles;
therefore, a Garage Liability coverage is purchased and endorsed.  The "garage liability
[coverage] is designed to protect the owner of a garage from claims of personal injury or
property damage that occur as a result of a faulty repair." Garrett v. Auto-Owners Ins. Co.,
689 So. 2d 179 (Ala. Civ. App. 1997).  As stated earlier the claims and judgment in the
underlying actions are for damages that are not damages because of bodily injury or
property damage as defined in the garage liability coverage.  Furthermore, the allegations
of Union Planters/Regions of sham transactions, fraudulent, intentional and felonious
conduct does arise out of a garage hazard. See, Factory Outlet Mobile Homes Sales, Inc.
v. Northwestern National Ins. Co., 596 So. 2d 908 (Ala. 1992) (alleged sexual assault did
not arise out of a garage hazard).  Moreover, the Auto-Owners garage liability coverage

36

also contains an absolute fraud exclusion. Again, the claims asserted by Union Planters/Regions do not arise out of a garage hazard, and the Court should rule the Garage Liability coverage has no applicability to the claims asserted by Union Planters/Regions.

**F.      Defendants Have Waived And Are Estopped From Asserting Coverage For The Jury Verdict In CV-04-251**

The Alabama Supreme Court has held that when a general verdict is rendered, it is not possible to determine upon which theory the verdict was based. See, AHAT v. MASA, 538 So. 2d 1209 (Ala. 1989). In AHAT, the Alabama Supreme Court held that there was no way for the Court to pierce the general verdict to determine under which theory the jury returned the verdict. In AHAT, supra, the Defendant physician's liability policy covered the hospital if its liability was based on the physician's actions under the doctrine of respondeat superior. A verdict was returned against the hospital on a general verdict form. It was impossible to tell from the general verdict whether the verdict was based on the hospital's independent negligence which was not covered by the MASA policy or on the employer-employee relationship between the doctors and the hospital.

After the verdict AHAT sued MASA on MASA's policy. AHAT was seeking indemnification through right of subrogation to recover from MASA. The Court held that there was no way for the Court to pierce the general verdict to determine under which theory the jury returned the verdict. The Court stated in the AHAT case:

> "On appeal, AHAT argues that the trial court erred in requiring it to establish that Lloyd Noland was entitled to coverage under the 'Additional Interest Endorsement' contained in each of the policies issued by MASA . . ."

> "We cannot agree. The trial court correctly placed the burden

37

on AHAT as the one seeking coverage to provide that coverage existed within the terms of the policy. <u>Bankers Fire and Marine Ins. Co. v. Contractor's Rental Co.</u>, 276 Ala. 80, 159 So. 2d 198 (1963). The issue in this case is whether the verdict in the May case against Lloyd Noland was based upon the jury's finding that Lloyd Noland was liable because of the negligence of the two medical doctors . . . This is impossible to resolve, because the verdict of the jury was a general one and because there was evidence from which the jury could have found liability as to Lloyd Noland based upon the negligence of other employees of Lloyd Noland. Absent a special verdict, the fact of coverage is impossible to prove. Therefore, the trial court correctly resolved this issue against AHAT." 538 So. 2d at 1216.

The Court went further in its analysis and reasoning by stating that this problem could have easily been solved by the use of special interrogatories. The Court noted that you cannot prove coverage by juror affidavits but that special verdict forms could have easily been presented to the jury. The Court implies in its decision that because AHAT and the hospital elected not to submit special interrogatories to the jury, AHAT was barred from recovery. The following language from the trial court's opinion in <u>AHAT</u> was adopted with approval by the Alabama Supreme Court as part of its opinion:

"In the present case now before this Court, the affidavits and answers of the jurors to questionnaires make evident the reason for the rule disallowing the use of juror's affidavits to explain their verdict or to in effect make special findings of fact with respect to their verdict."

"Counsel representing Lloyd Noland and supplied by AHAT could have asked the Court to require the jury to make special findings of fact at the time the case was submitted to the jury. AHAT and Lloyd Noland elected not to do so. They cannot now ask this Court to determine from the affidavits of the jurors or the other evidence submitted at the trial whether the verdict against Lloyd Noland was based on the negligence of Habachy and Park or whether the verdict against Lloyd Noland was based on evidence concerning the negligence of other physicians or employees of Lloyd Noland." 538 So. 2d at

38

1213.

The <u>AHAT</u> case shows there is a need and indeed, a duty on the person or entity seeking to prove coverage to have special interrogatories submitted to the jury in these type cases. <u>See</u> <u>also</u>, <u>Knutilla v. Auto-Universal Underwriters Ins. Co.</u>, 578 So. 2d 1359 (Ala. Civ. App. 1991).

Auto-Owners requested that the insured seek special interrogatories or special verdict forms which a coverage determination could be made. <u>See</u>, Exhibit "9" at AO00016-17 of Auto-Owners evidentiary submission. Nonetheless, general verdict forms were returned. <u>See</u>, Evidentiary Submission Exhibits 3, 4, and 5. Auto-Owners has previously set forth in this brief reasons there is no coverage for the claims, damages and judgment against Sunshine Camping Center in CV-04-251 including, *inter alia*, that there was not an "occurrence", no covered property damage or other covered damage, and non-severable, specifically excluded claims alleged. Nonetheless, if the Court herein finds that it cannot make a coverage determination because of the type verdicts returned, Auto-Owners asserts that the failure or refusal of Sunshine Camping Center to pursue such findings precludes Sunshine Camping Center from meeting its burden of proving coverage, and that Sunshine Camping Center has waived or is estopped from asserting coverage for the claims, allegations and judgment in CV-04-251.

## G.     Defendants Have The Burden Of Proving That Coverage For the Judgment In CV-04-251-M Exists Under The Insurance Policy

The Alabama Supreme Court has held that an insurer's duty to defend is broader than the insurer's duty to pay. <u>See</u>, <u>Hartford Cas. Ins. Co. v. Merchants & Farmers Bank</u>, 2005 WL 2108550 (Ala. Sept. 2, 2005); <u>see</u> <u>also</u>, <u>Tanner v. State Farm Fire & Cas. Co.</u>,

39

874 So. 2d 1058 (Ala. 2003). The fact that a duty to defend may be invoked by a complaint does not, however, prove that an insurer has a duty to pay. See, Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058 (Ala. 2003). Once a judgment is entered, the parties seeking to prove coverage have the burden of proving that the judgment is based on a covered claim. Alabama Hosp. Ass'n Trust v. Mutual Assur. Soc. Of Alabama, 538 So. 2d 1209 (Ala. 1989). In AHAT v. MASA, the Alabama Supreme Court held that the parties seeking coverage for a judgment under a liability policy has the burden of proving coverage exists under the policy for the judgment. A similar result was reached by the Alabama Court of Civil Appeals in Knutilla v. Auto-Owners Ins. Co., 578 So.2d 1359 (Ala. Civ. App. 1991) in a case involving a bond claim.

The only specifications of the jury in the underlying case CV-04-251-M regarding the award against Sunshine was that the award was compensatory damages of $143,870.79. The only compensatory damages alleged or submitted to the jury was for purely economic losses or damage to intangible property which are not "property damage" as defined in the insurance policy. See, Section II. B. of this brief.[3] The failure of the parties in the underlying action to request special interrogatories or special verdict forms from the jury regarding the claims/theories of liability and the type damages awarded prohibits them from proving coverage under the insurance policy at issue for the verdict against Sunshine due to the fact that the parties claiming coverage have the burden of proving the claim fell within the terms of the policy. See, State Farm Fire & Casualty Co.

---

[3]There could not be any award of covered attorney's fees because a general verdict was returned which would be insufficient to support imposition of attorney fees. See, Ford Motor Co., Inc. V. Phillips, 551 So. 2d 992, 996 (Ala. 1989); see also, General Motors v. Lucas, 530 So. 2d 224, 228 (Ala. 1988).

v. Shady Grove Baptist Church, supra; Alabama Hosp. Ass'n Trust v. Mutual Assur. Soc. Of Alabama, supra; Knutilla v. Auto-Owners Ins. Co., supra. The rationale for this result is just and appropriate because the insurance company does not have control of the litigation when defending under a reservation or rights, and the insurer does not have the right to intervene in the action as a matter of right. See, Mutual Assur., Inc., v. Chancey, 781 So.2d 172 (Ala. 2000).

In the underlying action, CV-04-251-M, general verdicts were entered in favor of Union Planters/Regions against Sunshine Camping Center. The type damage and theories of liability upon which the verdicts were returned and judgments entered are not identified because neither special interrogatories nor special verdict forms were requested or submitted to the jury by the parties who now seek coverage under the insurance policy at issue. Speculation of several possible theories for causation of a loss, only some (if any) of which may be covered, is not substantial evidence upon which a trial court may find coverage under an insurance policy. See, State Farm Fire & Cas. Co. v. Shady Grove Baptist Church, 838 So. 2d 1039 (Ala. 2002).

In this case Auto-Owners has submitted substantial evidence that any damages alleged or awarded were not covered damages caused by an occurrence, and the claims are expressly excluded from coverage. Certainly, the Defendants in this action have not met their burden of proving by substantial evidence that the judgment in CV-04-251-M falls within the coverage of the Auto-Owners policy.

### H.    Other Defenses to Coverage

In addition to the foregoing reasons, Auto-Owners has set forth in Auto-Owners' Complaint for Declaratory Relief and Judgment, as amended, additional secondary

reasons compelling a finding of no coverage for defense or indemnity under the Auto-Owners' policies. In setting forth the arguments herein, which Auto-Owners asserts are fully dispositive of this action, Auto-Owners does not waive the grounds asserted herein, nor any other grounds set forth by Auto-Owners in support of its Complaint for Declaratory Relief and Judgment, as amended, and in its motion for summary judgment.

## III.

## CONCLUSION

For the reasons set forth in the foregoing brief and in Auto-Owners Insurance Company's Motion for Summary Judgment, Auto-Owners requests this Honorable Court to enter summary judgment in favor of Auto-Owners pursuant to Rule 56(c) of the *Federal Rules of Civil Procedure* and against Defendants, Sunshine Camping Center, Inc. (Sunshine Camping Center) and Union Planters Bank, N.A., and/or Union Planters Bank, N.A. n/k/a Regions Bank, N.A. (Union Planters/Regions) for the relief demanded in Auto-Owners' complaint for declaratory relief and judgment, as amended. Auto-Owners avers that there is no genuine issue as to any material fact and that Auto-Owners is entitled to the entry of a judgment in its favor as a matter of law. Auto-Owners further avers that it does not owe insurance coverage for defense or indemnity to Defendant Sunshine Camping Center, Inc., and that it does not have a duty to pay any damages, judgment or settlement for any of the claims, damages, events or judgment alleged in the underlying action styled Union Planters Bank, N.A. v. Sunshine Camping Center, Inc., et al., Civil Action No.: CV-04-251-M pending in the Circuit Court for Dale County, Alabama or regarding the cross-claim and third-party claim filed by Union Planters/Regions in the

underlying action styled <u>Robert M. McAllister v. Sunshine Camping Center, Inc., et al.</u>, Civil Action No.: CV-04-296-M.

In the event the Court determines that this action may not be disposed of in its entirety by entry of summary judgment in Auto-Owners' favor, Auto-Owners Insurance Company requests this Honorable Court to enter summary judgment in favor of Auto-Owners as to those Defendants and/or as to those issues, claims, damages, and/or actions upon which the Court determines such is proper.

Date this the 20th day of June, 2006

ROGER S. MORROW, MOR032

JOEL H. PEARSON, PEA019
Attorneys for Plaintiff, Auto-Owners
Insurance Company


OF COUNSEL:

MORROW, ROMINE & PEARSON, P.C.
122 South Hull Street
P.O. Box 4804
Montgomery, Alabama 36103-4804
Telephone:  (334) 262-7707
Facsimile:  (334) 262-7742

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the following by placing a copy of same in the United States mail, first class postage prepaid on this the 20th day of June, 2006.

Hon. Robert H. Brogden
P.O. Drawer 1007
Ozark, Alabama 36361-1007

Honorable John G. Smith
Balch & Bingham
P.O. Box 78
2 Dexter Avenue
Montgomery, Alabama 36101-0078

_____
Of Counsel

44